IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MICHAEL LEE MALONE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY<br><br>    Defendant. | Civil Action No. 3:12-1153–GRA-JRM<br><br><br><br>**REPORT AND RECOMMENDATION** |

      This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

      Plaintiff filed an application for DIB on August 28, 2009, alleging disability as of February 16, 2009. Tr. 106-116. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 16, 2011, at which Plaintiff and a vocational expert ("VE") appeared and testified. On November 10, 2011, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled because the ALJ concluded that work exists in the national economy which Plaintiff can do.

      Plaintiff was forty-five years old at the time of the ALJ's decision. He has an eleventh grade education (he dropped out of school in the twelfth grade). See Tr. 36. Plaintiff previously worked

in the construction industry as a helper with carpentry and operated heavy equipment. Tr. 36. Plaintiff alleges disability due to degenerative disc disease.  Tr. 19, 39.

The ALJ found (Tr. 19-25):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 16, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: Degenerative disc disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with, lifting, carrying and handling 20 pounds occasionally and 10 pounds frequently; no prolonged sitting, standing or walking and allow to sit or stand at will; that does not involve work at heights or around hazardous machinery, climbing, balancing or operation of automotive equipment; nor does it require repetitive bending or twisting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 3, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569 and 404.1569(a) and 404.1568(d)).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2009, through the date of this decision (20 CFR 404.1520(g)).

The Appeals Council denied Plaintiff's request for review on March 19, 2012. Tr. 1-3. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on May 1, 2012.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

In February 2009, Plaintiff injured his back while lifting a fire-rated door at his job. See Tr. 211. An MRI on March 17, 2009 showed degenerative disc disease which was most prominent at L5-S1, where a bulging disc contracted and displaced the left S1 nerve root. Tr. 207–208. Dr. John Hibbitts, an orthopedic surgeon, treated Plaintiff from March 23, 2009 through June 8, 2009. Examination on March 23, 2009 indicated that Plaintiff had a positive straight-leg raising exam on the left. Dr. Hibbetts diagnosed Plaintiff as suffering from a symptomatic herniated disc. Tr. 211. On April 20, 2009, Dr. Hibbitts assessed Plaintiff as having low back pain with radiculopathy down his

left leg with S1 nerve root impingement. He administered an epidural steroid injection. Tr. 209. Plaintiff later reported that this relieved his symptoms, and Dr. Hibbitts released Plaintiff to return to work on May 4, 2009. Tr. 210.

On July 9, 2009, Plaintiff was referred to a neurosurgeon, Dr. Michael Bucci, for complaints of back pain. Dr. Bucci reviewed Plaintiff's MRI, noting two small bulging discs at L5-S1 and on the left at L4-5. Examination revealed Plaintiff had no sensory loss, normal reflexes, and full muscle strength throughout his body. Straight leg raising test was negative on both sides. Dr. Bucci concluded that surgery was not necessary and referred Plaintiff to Dr. Eric Loudermilk, a pain specialist. Tr. 228-229.

Dr. Loudermilk began treating Plaintiff in August 2009. He administered two epidural steroid injections, but Plaintiff reported that these injections gave him no significant relief. Tr. 231-236. On September 28, 2009, Plaintiff reported a lot of anxiety and trouble sleeping. Dr. Loudermilk prescribed Klonopin in addition to Lyrica and Lortab. Tr. 236. Nerve conduction studies, administered by Dr. Carol Burnette, showed some mild radiculopathy and neuropathy on Plaintiff's left side, with normal motor nerve conduction. Tr. 242. A CT scan taken on October 6, 2009, however, showed no evidence of nerve root impingement. Tr. 240, 252. On October 13, 2009, Dr. Loudermilk performed a lumbar epidural blood patch procedure because Plaintiff was having persistent headaches following a lumbar spine myelogram. Dr. Loudermilk recommended continuing Lortab and Lyrica for pain, and concluded that surgery was not an option. Tr. 239-240.

On October 27, 2009, State agency physician Dr. Hugh Wilson reviewed Plaintiff's medical records. Dr. Wilson opined that Plaintiff retained the capacity to occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in a workday, and sit about six hours

in a workday. Dr. Wilson also believed that Plaintiff's condition limited him to frequent climbing of ramps or stairs; frequent balancing; occasional stooping, kneeling, crouching, and crawling; and never climbing ladders, ropes, or scaffolds. Tr. 258-265.

On November 25, 2009, Dr. Loudermilk added Paxil to Plaintiff's medication regimen for depression. He assessed that Plaintiff was suffering from chronic mechanical low back pain of unclear etiology with mild lumbar disc bulging and disc protrusions, without any evidence of nerve root compression. Dr. Loudermilk did not believe that Plaintiff was disabled and thought that Plaintiff needed to complete a work hardening program and return to some type of gainful employment. Tr. 278. On February 16, 2010, Dr. Loudermilk opined that Plaintiff was at maximum medical improvement and should be able to return to gainful employment. Tr. 275.

In approximately February 2010, Plaintiff underwent a functional capacity evaluation ("FCE"). Plaintiff's physicians noted that the FCE report indicated Plaintiff did not give his full effort. See Tr. 270, 275. Dr. Loudermilk wrote there were multiple inconsistencies that would suggest Plaintiff may have been able to perform at a greater physical capacity than he was exhibiting. Tr. 275.

Dr. Loudermilk requested that his partner, Dr. Burnette, evaluate Plaintiff for an impairment rating. In March 2010, Dr. Burnette examined Plaintiff and found some increased muscle tension and a restricted range of motion in Plaintiff's lumbar spine. Plaintiff reported pain with left hip movements, but his right hip was pain free. Plaintiff retained full range of motion in all other joints. A neurologic examination revealed an altered sensation in Plaintiff's left posterolateral leg and foot with motor tone and strength which appeared to be within normal limits. Dr. Burnette assessed a twelve percent whole person impairment and a lumbar spine impairment of sixteen percent. The

recommended permanent work restrictions included "no lifting greater than 30 pounds occasional," no repetitive bending or twisting, and no prolonged sitting or standing without the opportunity to change positions at will. Tr. 270-73.

Dr. Craig Horn, a State agency psychologist, reviewed Plaintiff's medical records in May 2010. He opined that Plaintiff's mental impairments resulted in only mild limitations in functioning. Tr. 287-299. In June 2010, State agency physician Dr. Dale Van Slooten reviewed Plaintiff's file and opined that Plaintiff had the same limitations as opined by Dr. Wilson (that Plaintiff could perform a range of light work) with the additional restriction that Plaintiff should also avoid concentrated exposure to hazards such as machinery or heights. Dr. Van Slooten specifically noted that Plaintiff's alleged limitations in standing, sitting, and walking were not supported by evidence, and that Plaintiff's allegations of severe pain were not supported by findings on MRI or physical exam. Tr. 302-308.

Plaintiff's mental impairments were treated by Dr. Geera Desai, a psychiatrist, on two occasions in October and November 2010. See Tr. 309-312. On October 28, 2010, Plaintiff stated to Dr. Desai that he could not lift his infant son and he did not like being around anyone. Plaintiff reported that he suffered from crying, had difficulty sleeping, and his mind wandered. Tr. 310.

Dr. Loudermilk continued to see Plaintiff through February 2011. See Tr. 269, 314. During that time, Dr. Loudermilk prescribed medications including Xolox for pain. He continued to note that Plaintiff's reported back and leg pain was of unclear etiology. Tr. 269, 314, 315. On March 18, 2010, lumbar spine imaging indicated degenerative disc space narrowing posteriorly at L4-L5 and L5-S1. Tr. 282. On April 13, 2010, Dr. Loudermilk noted that Plaintiff tolerated his medications

(Xolox, Klonopin, Lyrica, and Paxil) without any side effects. He wrote that Plaintiff had mild lumbar disc bulging without obvious nerve root compression. Tr. 269.

On February 16, 2011, Dr. Loudermilk completed a questionnaire titled "Clinical Assessment of Pain." Tr. 322-323. Dr. Loudermilk opined that Plaintiff's pain was present to such an extent to be distracting to adequate performance of daily activities or work. Dr. Loudermilk thought it was likely that physical activities such as walking, standing, bending, stooping, or moving of arms and legs would greatly increase Plaintiff's pain to such a degree that it would cause distraction from performing a task or even cause total abandonment of a task. He also opined that medications prescribed or typically prescribed in cases like Plaintiff's could be expected to cause significant side effects which limited the effectiveness of work duties or the performance of such everyday tasks as driving an automobile. Dr. Loudermilk also thought that the Plaintiff's pain and/or medication side effects could be expected to be severe and to limit Plaintiff's effectiveness due to distraction, inattentiveness, and drowsiness. Additionally, Dr. Loudermilk opined that pain would remain a significant element in Plaintiff's life. Tr. 322-323. On November 9, 2010, an MRI of Plaintiff's cervical spine revealed mild disc degeneration at C2-3 through C5-6 and annular bulges from C3-4 to C5-6. Tr. 321.

On March 17, 2011, Dr. Desai completed a mental functional assessment questionnaire form. Dr. Desai opined that Plaintiff's ability to deal with the public and function independently was poor to none. She thought that his ability to relate to coworkers, interact with supervisors, deal with work stresses, and maintain attention and concentration were seriously limited, although not completely precluded. Dr. Desai wrote that these limitations were the result of Plaintiff's depression, anxiousness, and inability to focus due to pain. Additionally, Dr. Desai opined that Plaintiff's ability

7

to understand, remember, and carry out complex or detailed job instructions was seriously limited because his ability to retain information and concentrate was affected by a high anxiety level and pain. She thought that Plaintiff was capable of managing benefits in his own best interest. Tr. 324-326.

On July 11, 2011, Dr. Ron Thompson, a psychologist, examined Plaintiff at the request of the Commissioner. Dr. Thompson performed several tests of mental and psychological functioning. He noted that Plaintiff's speech was normal and coherent, but that Plaintiff appeared to have poor stress coping skills, was easily distracted, and seemed to have delayed cognitive processing. Dr. Thompson estimated that Plaintiff had low borderline intellectual functioning based on his interview with Plaintiff. However, IQ testing fell in the mild range of mental deficiency. Dr. Thompson noted that Plaintiff appeared to score far below what would be expected of one who has worked as a machine operator and carpenter for a number of years. He attributed this inconsistency to Plaintiff's poor psychological adjustment to Plaintiff's current physical allegations. Dr. Thompson noted that Plaintiff's complaints of pain were extraordinary and histrionic, and his psychiatric symptoms appeared to be quite pronounced and related to anxiety and preoccupation with pain. Dr. Thompson opined that Plaintiff could not possibly concentrate on simple repetitive types of tasks without being involved in a dangerous situation. Additionally, Dr. Thompson opined that Plaintiff would have marked restrictions in his ability to interact appropriately with the public, supervisors, and co-workers in a usual work setting and, would have extreme restrictions responding to work pressures. Tr. 339-344.

On July 12, 2011, Dr. Russell Rowland, a neurologist, examined Plaintiff at the request of the Commissioner. Plaintiff had no muscle atrophy and full strength in all of his extremities. Although

there was some limitation of range of motion of Plaintiff's hips and knees, Dr. Rowland did not believe Plaintiff was giving full effort. Straight leg raising tests were negative. Dr. Rowland concluded that Plaintiff's symptoms far outweighed the physical findings and far outweighed the findings on the MRI of Plaintiff's lumbar spine. He stated that there appeared to be "a lot of emotional overlay with [Plaintiff's] pain." Tr. 327-331.

## **HEARING TESTIMONY**

Plaintiff testified at the hearing that he attended special education classes and could not read or write. He stated that he worked in the construction industry as a helper with carpentry and operated heavy equipment. Tr. 36  Plaintiff testified that he also worked as a plumber and an electrician's helper, and performed a job at a plastic factory which involved lifting and handling large rolls of plastic that weighed up to 800 pounds and required two men to handle. Tr. 37. He stated he lifted up to 200 pounds doing construction work. Tr. 38. Plaintiff reported that he stopped work on February 16, 2009, after he injured his back lifting a heavy metal door. He testified that he suffers severe pain in his back running down both legs with throbbing, tingling and stabbing; severe headaches; and numbness in his arms. Tr. 38-40. Plaintiff stated that he uses a cane for balance and to help him get up and down, his back gives out, and he falls a lot. Tr. 40. Plaintiff reported that he could not sit and stand comfortably for more than a short period of time.

Plaintiff testified he was very emotional with crying, anger, and sadness because he cannot do the things he used to do. Tr. 44. He stated he used to fish, hunt, play golf, and play with his children. Tr. 44.

9

Plaintiff stated that his medicines cause him to feel dizzy, light-headed, and sleepy. Tr. 45-46. During the day, he occupies himself watching television or sleeping. He testified that he attempts to relieve his pain by attending therapy with a chiropractor. Tr. 47-49.

## DISCUSSION

Plaintiff alleges that the ALJ erred in: (1) failing to find that his mental retardation met the Listing of Impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P., App. 1 at § 12.05C and/or § 12.05D for mental retardation; (2) failing to accord great weight to treating sources Dr. Loudermilk and Dr. Desai; (3) finding that his depression, anxiety, and pain disorder were not severe impairments; (4) according no weight to Dr. Thompson's medical source statement; (5) concluding there was no medical basis for his alleged severe pain and thus there was no basis for the degree of limitations found by Drs. Desai and Thompson; and (6) failing to accord greater weight to the opinions and reports of the treating physicians than the weight assigned to the one-time consultative examination of Dr. Rowland. The Commissioner contends that the ALJ's decision is supported by substantial evidence[1] and free of harmful legal error.

A.   Severe Impairments

Plaintiff alleges that the ALJ erred when he concluded that Plaintiff's depression, anxiety, and pain disorder were not severe impairments. He appears to argue that these are severe

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

impairments based on the functional capacity questionnaires of Drs. Loudermilk, Desai, and Thompson which listed severe and mental restrictions caused by Plaintiff's depression, anxiety, and pain. The Commissioner contends that because Plaintiff's mental impairments did not cause any significant limitations, it was reasonable for the ALJ to determine that those impairments did not meet the regulatory definition of a severe impairment.

It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:

> the abilities and aptitudes necessary to do most jobs. Examples of these include --
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

The ALJ's determination that Plaintiff did not have a severe mental impairment (or impairments) is not supported by substantial evidence. Plaintiff has presented evidence that his anxiety and depression were severe impairments. Dr. Loudermilk began treating Plaintiff with medication for anxiety in September 2009 (Tr. 241), and depression in November 2009 (Tr. 278).

11

Although Dr. Loudermilk stated in May 2010 that Plaintiff had depression and anxiety (for which Klonopin and Paxil were prescribed) that caused only "slight" limitations on Plaintiff's ability to work, he continued to treat Plaintiff with a number of medications for psychological impairments after that time. In September 2010, Dr. Loudermilk wrote that Plaintiff tried Zoloft, but it did not help much and Plaintiff wanted to try another medication for depression. Dr. Loudermilk wrote that Plaintiff reported episodes where he was extremely depressed and cried. Tr. 319. In October 2010, Plaintiff began seeing Dr. Desai, who prescribed additional medications for anxiety and depression. In January 2011, Dr. Loudermilk noted that despite prescribed medications, Plaintiff had issues of anger and mood lability. Tr. 315. Dr. Loudermilk opined in February 2011 that Plaintiff's pain would be distracting to adequate performance of work. Tr. 322. In her March 2011 opinion, Dr. Desai listed numerous limitations due to Plaintiff's depression, anxiety, and pain which would cause more than a minimal effect on Plaintiff's ability to work. See Tr. 324-326. Consultative psychologist Dr. Thompson opined in July 2011 that Plaintiff psychiatric symptoms appeared to be quite pronounced and that Plaintiff could not possibly concentrate on simple repetitive types of tasks without being involved in a dangerous situation. See Tr. 339-344.

The Commissioner argues that even if the ALJ's decision that these impairments were not severe is unreasonable and unsupported, it is irrelevant because the ALJ considered the effects of all of Plaintiff's impairments in combination and considered the effects of his mental impairments at the later steps in the decision-making process. An ALJ's failure to consider whether an impairment is severe may be harmless where the ALJ discusses the evidence and limitations related to that

impairment at step four.[2] See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(noting that "[e]ven assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" and "[t]he decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4."). Here, however, it is unclear that the ALJ properly considered Plaintiff's mental impairments as he appears to have discounted Plaintiff's mental impairments entirely. The ALJ, noting that consultative physician Dr. Rowland concluded that Plaintiff's pain symptoms were exaggerated, found that it followed that Plaintiff's mental impairments were exaggerated. The ALJ also found that because there was no evidence of a physical impairment that would cause the degree of pain alleged by Plaintiff, that there was no basis for Plaintiff's mental limitations. See Tr. 20, 23-24. In doing so, the ALJ does not appear to have considered all of the available evidence. As discussed below, the ALJ failed to consider Dr. Loudermilk's February 2011 opinion (Clinical Assessment of Pain), and thus may have not properly considered the other opinion evidence.

B.     Opinion Evidence

Plaintiff alleges that the ALJ erred in failing to give great weight to the opinions of his treating physician (Dr. Loudermilk) and psychiatrist (Dr. Desai). He also alleges that the ALJ failed to properly evaluate the consultative opinion of Dr. Thompson, a psychologist. Plaintiff notes that although Dr. Loudermilk indicated in February 2009 (Tr. 275) that Plaintiff would be able to return to gainful employment, he later concluded (in February 2011) that Plaintiff suffered from

---

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

severe restrictions that precluded him from performing substantial gainful work activity on a regular and sustained basis (Tr. 322-323).  He argues that Dr. Loudermilk's opinion should have been accorded great weight because Dr. Loudermilk treated Plaintiff more often and over a longer period of time than any other healthcare provider of record.  Plaintiff argues that Dr. Desai was Plaintiff's treating psychiatrist and her opinion (that his psychiatric conduction caused such mental functional limitations that he was unable to perform work on a regular and sustained basis - Tr. 324-326), should have been great weight because it is substantiated by Dr. Loudermilk's treatment of Plaintiff (prescribing various psychotropic medications and observing episodes of extreme depression), and by the consultative psychological evaluation of Dr. Thompson (reporting severe restrictions resulting from depression and anxiety and noting that there was a lot of emotional overlay to Plaintiff's pain - Tr. 331, 342-344).  Plaintiff also argues that the ALJ erred in rejecting Dr. Thompson's opinion because Dr. Thompson's opinion is fully corroborated by the functional limitations described by Dr. Desai, the observations of Dr. Loudermilk and Dr. Burnette that Plaintiff's depression and anxiety magnified his pain and affected his ability to cope, and by Dr. Rowland's observation that there was a lot of emotional overlay with Plaintiff's pain (Tr. 331).  Finally, Plaintiff argues that the ALJ erred in assigning more weight to the one-time consulting examination of Dr. Rowland than the opinions of Plaintiff's treating physicians.  Plaintiff argues that objective medical evidence (including spinal MRIs showing abnormalities and defects which could cause low back and upper spine pain and nerve conduction/EMG studies which confirmed L5 and S1 radiculopathy and mild left sural sensory neuropathy) contradicts Dr. Rowland's opinion.

     In determining the weight to assign medical opinions, the adjudicator must consider: (1) the relationship between the provider and the claimant, including its length, nature, and frequency; (2)

the degree to which the source presents an explanation and relevant evidence to support the opinion, particularly medical signs and laboratory findings; (3) how consistent the medical opinion is with the record as a whole; (4) whether the source is a specialist and offers an opinion related to the area of specialty; and (5) any other factors that tend to support or contradict the opinion. See 20 C.F.R. §§ 404.1527 and 416.927. The ALJ is not, however, required to expressly apply each of these factors in deciding what weight to give a medical opinion and not every factor applies in every case. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527 and 416.927; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p

provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p.

Here, the ALJ's evaluation of the opinion evidence is not supported by substantial evidence. The ALJ does not appear to have considered Dr. Loudermilk's February 2011 opinion (Clinical Assessment of Pain) and there is no discussion as to the weight given this opinion.   It is unclear whether the ALJ considered Dr. Loudermilk's February 2011 opinion and/or the medical records of Dr. Loudermilk and his staff concerning treatment of Plaintiff's psychological impairments.  It is possible that consideration of this opinion and the records may have an impact on the evaluation of Dr. Desai's opinion.[3]  The ALJ discounted Dr. Desai's opinion and that of Dr. Thompson in large part based on his extrapolation from Dr. Rowland's consultative opinion.  Dr. Rowland, however, is not a mental health specialist.  Further, Dr. Rowland's impression included that Plaintiff had chronic depression and that there was a lot of emotional overlay with Plaintiff's pain.

As the ALJ failed to properly weigh all of the opinion evidence, it is unclear that the ALJ properly weighed Plaintiff's credibility or if the ALJ properly determined that Plaintiff met the Listing at § 12.05.[4]

---

[3]As there are only records of two occasions on which Dr. Desai treated Plaintiff, it is unclear whether she was a "treating physician." See 20 CFR § 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides ...medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).").

[4]The parties appear to disagree as to whether Plaintiff has shown that he had the required deficits in adaptive functioning to meet the Listings at § 12.05C or § 12.05D.  Examples of "[d]eficits in adaptive functioning [may] include limitations in areas such as communication, self-care, home

(continued...)

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly consider all of Plaintiff impairments (including his depression, anxiety, and pain syndrome); weigh all of the opinion evidence including the opinions of Plaintiff's treating physician; weigh Plaintiff's credibility in light of all of the evidence; and determine whether Plaintiff met or equaled the Listing at § 12.05C and/or § 12.05D.

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

May 14, 2013
Columbia, South Carolina

---

[4](...continued)
living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012)(citing Atkins v. Virginia, 536 U.S. 304, 309 n. 3 (2002)).